Mr. DeFranco. Yes, may it please the Court, my name is Ed DeFranco and I represent the Bally defendants in this case. Your Honor, in general terms, the patents and claims at issue in this case is to win something known as bonuses. The shared specification for the two patents at issue are obviously very lengthy, but the portions that relate to the bonusing products at issue in this case and the bonusing features set forth in the claim are rather limited. I think it's important to note by way of background, the two patents at issue here come from a very large patent family. Last time I checked, 24 patents in the record have issued from that family. Over 500 claims have issued. You can tell that. I don't want to suggest that I'm about to ask a question on the only question of interest, but the one and the only one is really an important issue and would you address that please, whether one is limited to only one. Yes, Your Honor. Part of the reason I wanted to start with the backdrop of the number of claims at issue, as you can tell from the claims in the two asserted patents, the patent attorney, the patentees tried to claim bonusing features in every which way. Lots of different terms trying to capture the same concept. With respect to the term one, it's a classic example where the patentee chose a specific language. They should live with the language they chose. They used the expression only one else. That's exactly right, Your Honor. This is not a case where we're trying to interpret the use of one specific term. Where the patentees meant something else, they used another phrase, one or more than one. Classic example, they should be limited to that specific language. That's exactly what the claim says. That's exactly the notice. But I think Judge Lurie's point is they used only one elsewhere. So only one means one and only one, even though it's a comprising claim. And I may be misunderstanding the point that Judge Lurie was asking you to address, but yes, they say more than or at least one elsewhere. But what about the only one distinction? Well, Your Honor, I don't mean to suggest that there's perfection in the way these terms are used. No one can say that that means more than one. My point is it says to one or via one, just as with only one, those are limited to one. The patentees, again, where they wanted to expand beyond one, they'd use phrases like at least said one. No difference, completely clear that they were talking about more than one. But even if we were to agree with your position that one means distinctly one or only one, why isn't it still correct to say, looking at the claim language, issuing a command over a network to one preselected gaming device, paying at said one gaming device? One command, one payment. That doesn't mean there couldn't be other commands to other computers and other payments. What happens outside the umbrella of the claim is irrelevant. But one command, one payment, meaning one command could not tell 20 computers to issue payments. That's the one. So why aren't we still giving very much life and meaning, very much correct construction to the word one, where it's just linked with the one command has to equate to one payment? Yes, Your Honor. Well, first, with respect to comprising, the cases that IGT cites, the law of comprising simply is it's not applicable here in the sense that this is not a situation where a party is trying to add other elements to a method claim and trying to avoid infringement by saying, well, we do more than what's just in the claim. We do not only A, B, and C. We do E, you know, E, F, and G. It's not the case here. The claim says to one of. You can't use the comprising case law to expand a particular limitation, restrictive language, and say, well, we can use comprising so one or only one can mean more than one. That's the comprising point. In terms of your point, Your Honor, with respect to choosing that isolated instance, they're applying this particular claim to a gaming system and method that delivers reconfiguration commands as the court found, but it delivers things to multiple machines. That's this particular type of bonus. It's called power rewards. The reason we raise this on appeal is because power reward simply does not work in delivering something to one and only one gaming device. Maybe I misunderstood the technology, and you can certainly explain it to me, but when there is, in the power reward situation, it's a single command that goes to a single computer to pay out. Now, there might be multiple commands issued to multiple computers, but each payment is only being made by that machine. Isn't that the way that the system works? Well, Your Honor, just to step back to make myself clear, there's an operator at the back end, the back room of the casino that sets up these bonusing features. They sit down at a terminal. They decide, well, I'm going to decide who's going to participate in this particular bonus. They pre-select less than all the gaming devices on the floor in some way. They may decide everybody who has a certain gold player card is going to participate in this bonusing event when they put the card in. To deal with each of those individuals, yes, of course, they have to communicate individually. In other words, that particular player is going to play a certain amount and do something that would allow them to get a power rewards bonus. For that reason, that communication has to be unique, but the claim is directed to that bonus feature as a whole, the application of that system. No, the claim says issuing a command over a network to one of said pre-selecting gaming devices responsive to the predetermined event paying at said one gaming device. So why isn't the one directed to one command, one payment, as opposed to only one gaming device could ever receive any commands? I mean, it seems that the linking of the word one between the two elements, to me, I think their best argument, as I understand it, is that that means one command, one payment, not one command is all that can ever be issued. A one-to-one correspondence, and that's why it appears in the two elements with the antecedent basis. That's their argument, as I understand it, and I guess I'm just curious if you could just really precisely explain why that isn't correct. Well, Your Honor, if you start with the top of the claim, it talks about pre-selecting less than all of the gaming devices, some subset of gaming devices, and when you work through the way the Power Rewards works, it issues a command to, you know, I don't want to get into the non-infringement on command, but what it issues goes to all the pre-selected devices that have been awarded those points. Yes, it does it one at a time, there's no way to avoid it, but it's our claim construction position that the way this claim is structured, there is one winning player, there is one player that earns that reward. It says 2-1, that's the way this overall bonusing scheme is covered by this claim, is laid out. It's not a system where you're pre-selecting multiple gaming devices and then issuing to each player that achieves that particular reward. Can you waive this argument? No, Your Honor, we cite in our briefs where we laid out these arguments in our summary judgment papers. The court didn't decide it, did it? The court, Your Honor, Judge Robinson is very well versed in patent cases. There were many, many issues to be decided both on claim construction summary judgment. I cannot tell you, I'm sorry, why she did not address it. She did not address this particular claim construction position. She didn't address the Micon's court's ruling. She didn't address other claim construction issues. Do you think we can decide it or must we send it back if we agree with you? I think, Your Honor, the operation of the systems here not disputed. I think this claim construction issue obviously the court could take up. I think the court could decide this issue without sending it back. Is Micon persuasive authority for us or is it binding? Your Honor, their point in their brief is that it's not binding because it was not necessary to the judgment that issued in that case. I'm not going to dispute that. I'm going to say it is persuasive here. They relied on it early in the case for the PI motion. It certainly is noticed to the public of the scope of the claims. They backed away from that order, we say, as they learn more about our products. They don't rely on it for anything. It's squarely relevant to at least two of the issues here. And again, the predecessor in interest, Acres Gaming, made those Did you give us the directed verdict? Because I couldn't find it. I couldn't find it online because it's from 2000. So Pacer doesn't go back that far electronically. So I wasn't sure if it appeared anywhere because I wasn't able to find it. I believe it was in the record below, Your Honor. It might not be in the appendix. I don't know. Maybe it's there. But if you find it later, tell him where it is on rebuttal. You can tell me where it is. We'll check and see. So just to finish up on one and only one, Your Honor, it's applied to a product where it clearly is not sent to one machine. For them to try to slice a portion of this product and say, well, there's a particular instance of infringement with respect to one player, again, that's stretching these claims, contorting them into something that was not envisioned. There are other claims that talk about more than one gaming device. If there's non-infringement of those claims for some other reason, that's not our problem. Obviously, we're entitled to design around these products. Your Honor, are there other questions in particular that the Court would like me to address? Let's see what we hear in rebuttal, and we'll make sure there's enough time to respond. Thank you, Your Honor. Ms. Maynard. May it please the Court, I'd like to address two areas in my time this morning. First, summary judgment of infringement should be affirmed. The District Court correctly construed all of the claim terms that Valley challenges here, and I would be happy to answer any of the judge's questions about any of those issues. Second, I would also like to address IGT's cross-appeal, because we do believe that the District Court did err in limiting the words command and message, which appear unmodified in the claims, and the District Court never last read in a restriction of reconfiguration from the specification. I notice you haven't addressed the only one question. If you look at Claim 21, is there an inconsistency between reading one in a broad fashion and only one in a narrow fashion? They're in the same claim. Why shouldn't they have the same meaning? I think because they're in the same claim, Judge Lurie, they should have distinct meanings. In fact, if you look at Claim 21, as I believe you are, on A241, in the second element, the term one is used via one of said selected game machines, and that's the one that Valley is discussing here. In the very next limitation, the patentee uses the words only one, and given that the patentee uses those two distinct terms in the same claim, they should be understood to have different meanings, and I believe they do. Don't they each refer to a command, and is it the same command? It may be the same command, Judge Lurie, but the only one doesn't modify command. So in the first limitation, issuing a command over the network, including- Modifies controller? Yes, Your Honor, it does. The controller should be associated with only one of the gaming devices, and that's how the Q's products work here. Each gaming device has a controller associated only with one gaming device. And you're saying that that's not inconsistent with multiple payments? No, Your Honor. Our argument is exactly as Judge Moore was explaining it. You do understand our argument, Judge Moore, which is that it is that the way that the accused products operate, here with power rewards, an eligible player walks up to a machine, inserts his tracking card, the transaction 151, the command that says, if you play X, you get Y, is sent only to that one machine. So the command is sent to that one machine. It's received and stored, Judge Lurie, in a controller associated only with that one machine, and then if that player stands at that machine and plays X, then a pay command will issue to pay that player Y, and that pay command goes only to the one machine at which he's playing. The district court didn't so hold? The district court held these products infringing, and there's no need to construe the term one, Your Honor, because it means one, like a, not only one. And we believe that they didn't press the argument that they're featuring here in the district court. They point to only one sentence at A491 in their summary judgment brief, and in context, I do not think that sentence fairly raises the argument that they feature here as their first sentence. So I do believe they did waive the argument. I do think, though, that the district court can be affirmed. I think you could hold that they waived it, and you don't need to address it. I think certainly her finding of infringement of these products can be affirmed because the products operate in a way that if you have any other concerns about any of the other issues on which infringement is based, I would like to address it. Otherwise, I'd like to discuss our cross-appeal. Well, before you move on to the cross-appeal, predefined event. At least in the prosecution history at A1179, there seems to be a claim that one is broader than the other, predetermined and predefined. I mean, the patentee clearly during prosecution suggested they should not have the meaning. It's hard for me to appreciate any difference in the meaning based on the specifications or even the common understanding of the words. But nonetheless, you've got, you know, this wild canon patentee out there saying it does have a different meaning. Why isn't the world on notice that they have to be construed differently? And please tell me how I'm supposed to construe them if they're to be construed differently. I think the patentee in the prosecution history to which you're referring, Your Honor, did suggest that the applicant believes it provides broader scope as to the nature of the event or the amount. At that time, the Micon magistrate judge had held predetermined not to encompass random events. And so I think the patent applicant was taking steps to protect against that carrying over. But we don't think... I didn't realize that timing. So the timing was such that this statement was being made after the Micon decision was already rendered. That's my understanding. So they were trying to come up with another word that would bring random within the if they were accepting the fact that it was already kicked out under predetermined? That's my understanding, Your Honor. Although I think that the Micon court was wrong to so construe predetermined and that standing here today there isn't much, if any, distinction between predetermined and predefined event. That it can be any event that one can sufficiently describe in advance of its occurrence. And its purpose, when one looks at the whole context of the claim, its purpose is simply to serve as the predefined trigger for the subsequent events. Well, we hold patentees through prosecution disclaimer and other sorts of doctrines to statements made in their prosecution because it's what puts the world on notice as to what they believe the scope of their claim is. I mean, what if any similar effect do you think these statements ought to have? At a minimum, they cause some confusion for a competitor who's looking and I think that the common understanding of both predetermined and predefined would suggest that it could be any event that one could either determine in advance, in other words, describe in advance with sufficient specificity to know when it has happened. And in predefined, they have very similar meanings, Your Honor. I mean, I take your point. I don't want to answer the question either. It's hard. But you're stuck with this language they said during prosecution. And it certainly, I think, puts people on notice of something and I just can't figure out what exactly. You know, the applicant believes they provide a broader scope as to the nature of event or amount. You know, the words that the district court used to describe the two things are slightly different and I think that they are correct. Predetermined event can be the occurrence of one or more conditions chosen in advance and a predefined event is an occurrence based on a criteria or criteria defined in advance. But as a practical matter, I think the claims and the common language of the claims in context would encompass anything that you can define or describe with sufficient particularity in advance to be the trigger. Does your position depend on whether or not we agree that defining something is the same as predetermining it? Your attorney has said the same. They don't have, no, the district court construed them to be slightly different, Your Honor. You'd use different words to describe them. Yes, that was what I asked. And I think, no, we would ask that you affirm the district court's construction. We think the district court's construction is correct. But I think that the district court's construction of a predetermined event is the occurrence of one or more conditions chosen in advance. So you choose conditions in advance. When those conditions occur, then there will be the trigger in the scope of the claims. And here, the accused products do exactly both of these things. In the one, the power rewards, the transaction 151 is the predetermined event. When the player, eligible player, inserts his tracking card, that's what causes the command to issue. And then in the power winners, when the in that sense, the get zero, the play zero, get the jackpot command to be sent to the winning player's machine. And both of those readily fit within the ordinary meaning of those terms. If you want, would you like to address the reconfiguration command issue? I would. Yes, thank you, Your Honor. We do think, as I said at the beginning, that the district court erred in reading the limitations from the specification to the unmodified terms command or message. This court's case law is clear that words are given their full scope and the claims are what define the invention. But this claim says, certainly if the word command was in the abstract, not in a claim, and you're pointing out that the claims define the invention, that I think that you have a really claim says issuing a command that's responsive to a predetermined event, you know, and then it also says paying at one of said gaming devices in accordance with the command. So we know two things about how the word command must be construed in order to fit within this claim. The word command must be construed such that it causes the payment at one of the gaming devices. Well, only a reconfiguration command does that as a reconfiguration command is used throughout this specification. So why isn't she exactly right? Not necessarily just because the word command in the abstract necessarily means reconfiguration command, but because the word command, as precisely used and delimited in this claim, requires it to equate to a reconfiguration command. Because nothing in the claim language, Your Honor, requires that causal element that you're reading in. It's the payment must be in accordance with the command, not caused by the command. So a command could go to the machine saying, as in the power winners, it does the DM 33 command, the directive message command goes to the winning player's computer and says, you know, post a message that says, John, you've won $100. That is a command and then the machine will pay in accordance with that command, the machine will pay $100. But that didn't that message didn't cause the command, but it still meets the claim language, which is simply in accordance with means in series, but in no way related to, I don't understand how you're divorcing the causation from the language in accordance with my instructions in accordance with my command. I mean, that would suggest you're doing it because I told you to do it. You're not doing it, because you're just choosing to do it. It just so happens you're doing it at the same time I told you to, my children might try that. But I'm not really listening to you, so I don't see how you can divorce the causation from that language. The normal meeting of in accordance with is just in a conformity to, so a command must go to the machine that has something to do with payment. So that in conformity with the command, payment has to be made that conforms to the command. So the command says, John, you're going to you've won $100 payment must be made at the machine of $100. That payment is in accordance with that command, even if it's some other command that causes the payment to be made. So there's nothing in the language that causes issuing the command. Were you reading claim 46? I'm sorry. I'm on claim 10 of the ADA. You're on claim 10. Okay. Issuing the command over the network to one of said preselected in response to a predetermined event. So issuing a command in response to the, for example, the play X, get Y, and then paying at some one gaming device in accordance with the command. So the play X, you'll get Y, and then you just get paid at that gaming device, the Y, but it doesn't mean nothing in that language says that the command must cause the payment. And in fact, the description, but in fact, the district court didn't say the command had to cause the payment because she gave you the promo key thing, right? The command didn't cause the payment. The pushing of the promo button ultimately caused the payment. So she didn't limit you to the command must cause the payment necessarily, but rather the command must make the payment available consistent with whatever the terms of the predetermined event were. So she didn't narrow it as much as you're suggesting right now she did, because if she did, then I got to go back and take away the promo stuff from you. Well, we do believe that she read in a causal connection and we ask in our cross appeal that you clarify that as well, although it isn't necessary to reverse because she based her judgment of non-infringement solely on the notion that command or message must be reconfiguration command. But the reason the court shouldn't read reconfiguration into message or command is that there are, as you say, commands are described and they're described in different ways. There are different types of commands mentioned in the specification. So there's status commands, there's many different types of messages mentioned. But the only commands that would fit the description of the word command in Claim 10, for example, are all reconfiguration commands in the spec. Yes, they talk about status commands, but you are not arguing to me that the status command is satisfying the requirements of Claim 10, that it's issuing a command over the network to one of said pre-selected gaming devices responsive to a predetermined event. You're not arguing to me that the status command satisfies that, right? But this court doesn't... limit that, yes, there's particular embodiments in the specification that are called reconfiguration commands, but this court doesn't limit the claimed language to the embodiments in the specification. In fact, in the same family of patents, in the 459 patent in Claim 1, which is interpreted in the my kind court's order that's in the JA, this same patent applicant actually did claim reconfiguration commands, but they didn't here. And we know they know how to say reconfiguration command because it is repeatedly said in the spec, yet they didn't claim it that way when they went to write what they claim. Instead, they describe the particular command. So in, for example, one's called a pay command in Claim 21 of the 812 patent. It's pay command, not pay reconfiguration command, it's a pay command. And so command should be given its ordinary, its ordinary meaning, and then the other terms, to be sure, the other terms then don't more have to be met, which is however that command operates would have to be satisfied, but that doesn't mean that one should read in reconfiguration to it. I'm sorry. I think we've exhausted this topic. Thank you. Mr. DeFranco. Thank you, Your Honor. Shall I address the pre-determined event first and predefined event? I think the my kind court had it right, as we said in our brief, something that's non-random. The parties have struggled, the district courts struggled with this notion of in predefined event. The problem with that is it leaves nothing that's not predetermined or predefined. Their expert was asked, give us an example of something that's not predetermined. He said, well, I guess if somebody woke up and decided to give a bonus, that wouldn't be predetermined. We said, please put it in the context of the claim. They said, well, I guess if the machine broke down, that would be predetermined. What does it mean? What does it add to the word event? What notice does it put anyone on? The my kind court said non-random. As a matter of fact, Bally tried to design around these products by, as we lay out in our brief, having a doubly non-random event. That's what the notion of predetermined is all about. It should exclude non-random, excuse me, should exclude random events. Predefined is a complete mystery. Zero notice to the public on that term. There is no question about it, your honors. It's not used in the specification anywhere of these patents. Yes, it was added during prosecution. They say it was because of the my kind decision. If that is a fact, they certainly didn't tell the patent office. There is one line that I can find mentioning predefined event when the patentees decided to add it to a claim and they throw in language saying, well, that broadens out the meaning of predetermined event in our opinion to use the word predefined. They don't explain it. They don't refer to the my kind decision. They don't say what it means. They give no disclosure, no indication, no notice of what predefined means. At best, it's the same thing. It would exclude random events. Again, the my kind court had it the district court didn't address the my kind court, but that is the only reasonable definition. With respect to cross appeal issues, again, the specifications here are not terrifically helpful on many of the claim construction issues. Yes, they're very lengthy. They deal with all sorts of things other than the bonusing events, but they are very specific when it comes to what commands and messages are as used in the claim. They would like command to mean anything in the computer context. It's the broadest definition of any sort of construction. When you look at the specification with respect to command, it's very clear. It's used 40 times as a reconfiguration command. They've been able to find one example of a status, something called a reconfiguration command. It's the only instance, one to 40, it's the only instance in which a command is not used as reconfiguration command. That's what claim construction is all about. There's no escape hatch for them to say, well, we broadened out and used just the word command in the claim and we can leave it at that. When read in light of the specification, it could not be clear. The same is true with respect to message. Now, they point to more examples of different messages in the specification, but again, when used with respect to the particular bonusing products, the delivery of bonusing features at set forth in the claim, a message is limited to a reconfiguration message. Judge Robinson got the construction for both of those terms exactly right. She laid out very clearly and specifically where in the specification the reconfiguration command is used and laid out. The same thing with respect to reconfiguration message. Figure 33, crystal clear that a message is used as reconfiguration message when used in the context of the bonusing feature. Same thing in the spec at column 25. It explains that a message that is used to create a bonusing event contains a reconfiguration command. That is exactly what Judge Robinson relied on. It is the correct interpretation. I should note also we have inventor testimony, John Akers. We cited this in our brief where he says that the messages are pretty much reconfiguration messages that are described here. For example, he said, pay on the single game at the end of the game, this one time only, or a message that say pay multiple jackpots. All of those messages are reconfiguration commands. That is the way the context of paying a bonus. They are not the way that the patentees used, intended the term message to be used in the particular claims. Any questions for Mr. DeFranco? Any questions? Thank you, Mr. DeFranco. Thank you. I was wondering if we used up your rebuttal time, but we'll give you one minute if you need it. Thank you, Your Honors. If there's anything else I could answer about our cross appeal, I'd like to do that because I do think... No, we're talking only about rebuttal on issues that have already been raised. Okay. No, I have nothing further, unless you have further questions for me. Thank you, Your Honor. Thank you, Ms. Maynard, and thank you, Mr. DeFranco. The case is taken under submission.